**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

**LINDA J. JENSEN**                                                           **PLAINTIFF**

      **v.**               **Civil No. 04CV85**

**IMAGISTICS INTERNATIONAL, INC.**                                      **DEFENDANT**

**O R D E R**

Now on this ___29th___ day of June, 2005, comes on for consideration **Defendant's Motion For Summary Judgment And Request For Oral Argument** (document #37), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. Plaintiff's Complaint alleges that she was discriminated against in her employment with defendant on the basis of her sex, and then subjected to retaliation when she complained of the discrimination, all in violation of **42 U.S.C. §2000e** and **Neb.Rev.Stat. §20-148** and **§48-1101 et seq.**

Defendant denied the material allegations of the Complaint, and now moves for summary judgment.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate

unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, 838 F.2d 268 (8th Cir. 1988).

3.   The parties have filed statements of facts which they contend are not in dispute. From those statements, and from the evidentiary submissions of the parties, the following significant undisputed facts are made to appear:

*   Defendant sells, leases and services photocopy machines, facsimile machines, and other office products through a nationwide network of branch offices and business product centers.

*   Starting in October, 1997, plaintiff worked for defendant as a sales representative for commercial copying equipment. She worked out of defendant's LaVista, Nebraska, office.

*   On March 9, 2001, plaintiff received a letter of reprimand from her then Sales Manager, Scott McIntosh, regarding concerns that she appeared to be withholding

sales leads from other representatives. Plaintiff denied these allegations, which she believed to have been made by Joe DiBiase, another sales rep in the LaVista office.

* On April 9, 2001, DiBiase received a letter of reprimand from McIntosh and supervisors, regarding conduct characterized as "outbursts."

* On or about April 20, 2001, plaintiff received a letter from her General Manager, Mike Popelier, regarding tardiness.

* In a June 11, 2001, memo, Popelier detailed the daily, weekly, biweekly and monthly reports, and the number of cold calls, required of sales rep. Plaintiff felt that the cold call requirement should not apply to her because of her level of sales.

* In July, 2001, DiBiase was promoted to the position of Sales Manager.

* Some time in the Summer or Fall of 2001, plaintiff and Popelier reached an agreement -- mediated by Jeff Odom of defendant's Department of Human Resources -- that if plaintiff met certain sales objectives, she would be required to make fewer cold calls than other sales representatives.

* On or about September 13, 2001, plaintiff received

      another letter from Popelier regarding tardiness.

* On or about September 18, 2001, plaintiff filed a Charge of Discrimination with the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC").  A copy of this Charge was received by defendant on or about October 1, 2001.
* On or about October 15, 2001, plaintiff received a memorandum from Popelier regarding failure to make required cold calls and to file required reports.
* On or about December 31, 2001, plaintiff received a letter from Popelier regarding "lack of professional conduct in the office."
* On January 14, 2002, plaintiff signed a document detailing job performance objectives.
* On or about January 30, 2002, plaintiff received another letter from Popelier regarding tardiness.
* On or about February 15, 2002, plaintiff received a letter from Popelier regarding "performance deficiencies."
* On or about March 11, 2002, plaintiff received an Employee Problem Discussion form ("EPD") citing non-compliance with her performance objectives.  This document recites that plaintiff failed to submit cold call sheets between January 14, 2002, and March 11,

-4-

2002, and failed to turn in any reports for the month of February, 2002.

* In March, 2002, plaintiff submitted some cold call report forms which were dated in January, 2002.
* On March 19, 2002, plaintiff was verbally reprimanded by Popelier for being in the office rather than out in the field performing cold calls.
* On or about April 12, 2002, plaintiff received a letter from Odom, regarding "low sales production, negativity and tardiness."
* In early May, 2002, Popelier -- with the approval of Odom and the assistance of Kevin Braden -- conducted several audits of plaintiff's cold call reports, and found some discrepancies.
* On May 1, 2002, plaintiff filed a second Charge of Discrimination with the NEOC and the EEOC.
* On May 16, 2002, the NEOC issued a Determination with regard to plaintiff's first Charge of Discrimination. Plaintiff did not file suit within 90 days of this Determination.
* After receiving a copy of plaintiff's second Charge of Discrimination, Popelier conducted a third audit of plaintiff's cold call activity, again finding some discrepancies.

* On May 31, 2002, Popelier and Braden met with plaintiff and placed her on "administrative leave," citing discrepancies in her cold call reports as the reason.
* On June 5, 2002, plaintiff was informed that she was terminated. Several different explanations for her termination were given. Popelier testified that plaintiff was terminated because of the discrepancies in the cold call reports, failure to turn in cold call reports, negativity, and tardiness. Odom testified that plaintiff was terminated because of "falsifying company documents." The document memorializing her termination gave "not meeting sales requirements" as the reason.
* On June 27, 2002, the EEOC issued a Right To Sue letter with regard to plaintiff's first Charge of Discrimination. Plaintiff did not file suit within 90 days of her receipt of this letter.
* On September 12, 2002, plaintiff filed a third Charge of Discrimination against defendant with the NEOC and the EEOC.
* On October 18, 2002, plaintiff filed an Amended Charge of Discrimination with the NEOC and the EEOC, which amended her second Charge by changing the name of the listed employer from Imagistics The Copy Center to Imagistics International, Inc.

  * On February 13, 2003, the NEOC issued its Determination with regard to plaintiff's second Charge of Discrimination. Plaintiff did not file suit within 90 days of her receipt of this Determination.

  * On May 7, 2003, the EEOC issued plaintiff a Right To Sue letter with regard to her second Charge of Discrimination. Plaintiff did not file suit within 90 days of her receipt of this letter.

  * On November 21, 2003, the NEOC administratively terminated plaintiff's third Charge of Discrimination.

  * On December 4, 2003, the EEOC issued a Notice of Right to Sue with regard to plaintiff's third Charge of Discrimination.

  * Plaintiff filed this suit on February 23, 2004, more than 300 days from the date of her termination, but within 90 days of the NEOC and EEOC decisions.

  4. Defendant contends that plaintiff's first two Charges of Discrimination are barred by the applicable statute of limitations, and cannot be revived by the timely filing of suit on third Charge of Discrimination, citing **Spears v. Missouri Department Of Corrections and Human Resources**, **210 F.3d 850 (8th Cir. 2000)**. Thus, in defendant's view, plaintiff can only raise the issue of whether her termination was based on gender discrimination or retaliation, and cannot proceed on a theory of

-7-

hostile environment discrimination or retaliation.

Plaintiff, for her part, argues that she has alleged an on-going course of discrimination, starting after she complained about DiBiase's "outbursts." While she filed three separate Charges of Discrimination, she contends that these all relate to one course of events, rather than three separate incidents. She relies on **National Railroad Passenger Corp. v. Morgan**, **536 U.S. 101 (2002)**.

**Morgan** addressed the issues of (a) what constitutes an unlawful employment practice, and (b) when is it considered to have "occurred." The Supreme Court there distinguished between discrete discriminatory acts such as termination, that "occur" on the day they "happen," and unlawful "practices" such as creating a hostile environment, which involve repeated conduct occurring over a period of time. It held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," but that where the discrimination is a practice, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."

**Morgan** is inapposite to the issue here presented. That case focused on how long after a discriminatory act a charge of discrimination can be filed and considered timely. The issue here

-8-

is how long after the accrual of right to sue on a charge of discrimination a lawsuit can be filed and considered timely. The right to file is extinguished for federal claims by the passage of more than 90 days from issuance of Right to Sue letters. **42 U.S.C. §2000e-5(f).** It is extinguished for claims under the Nebraska Fair Employment Practice Act by the passage of more than 90 days from the NEOC's last action on the related charges. **Neb.Rev.Stat. §48-1120.** It is extinguished for claims brought pursuant to **Neb.Rev.Stat. §20-148** by the passage of 300 days from the occurrence of any of the alleged unlawful employment practices. **Hassler v. Alegent Health, 198 F.Supp.2d 1108 (D.Neb. 2002).**

Plaintiff concedes that more than 90 days passed between the accrual of rights to sue on her first two charges and the filing of suit, and that more than 300 days passed between her termination and the filing of suit. She argues that her hostile environment claim is still viable, however, because it was rolled into her third Charge of Discrimination by the Amendment filed on October 18, 2002. It was actually the second Charge of Discrimination that was amended, however, so the amendment does not salvage the hostile environment claims that expired because plaintiff did not timely file suit on them. The Court, therefore, concludes that plaintiff's claims are limited to those asserted in the third Charge of Discrimination, which was filed on September

-9-

12, 2002.[1]

In her third Charge of Discrimination, plaintiff alleged that she had been subjected to discrimination based on sex and retaliation. She alleged that this was "continuing action" starting at the earliest on May 31, 2002, the date she was placed on administrative leave. As outlined in the "Particulars" section of the Charge, the gravamen of plaintiff's charge is that she was terminated in retaliation for having filed two previous Charges of Discrimination. The Court concludes that plaintiff's claim that she was terminated in retaliation for making complaints of discrimination and retaliation is viable, but that her claims for a hostile environment based on discrimination and retaliation are time-barred. Summary judgment will, therefore, be granted in favor of defendant on all claims except plaintiff's claim of discriminatory and retaliatory termination.

5. Defendant also contends that plaintiff cannot make out a prima facie case that her termination was motivated by either sex discrimination or a desire to retaliate against her for making complaints of sex discrimination.

In order to establish a prima facie case of sex discrimination, plaintiff must show that she is a member of a protected class, that she was meeting her employer's legitimate

---

[1]This is not to say that plaintiff's evidence is similarly limited, as conduct dating back to the filing of the first Charge of Discrimination could well be relevant to a determination of her claim that she was terminated in retaliation for filing such Charges.

-10-

expectations, that she suffered an adverse employment action, and that similarly situated employees outside the protected class were treated differently. If the defendant can rebut this showing by offering a legitimate, non-retaliatory reason for the adverse action, plaintiff must demonstrate that the defendant's proffered reason was not the real reason, but was merely a pretext for illegal retaliation. **Shanklin v. Fitzgerald, 397 F.3d 596 (8th Cir. 2005).**

In order to establish a prima facie case of retaliation, plaintiff must show that she participated in statutorily-protected activity, that defendant took adverse employment action against her, and that there was a causal connection between the two things. As with a discrimination claim, if the defendant rebuts this showing by offering a legitimate, non-retaliatory reason for the adverse action, plaintiff must demonstrate that the defendant's proffered reason was not the real reason, but was merely a pretext for illegal retaliation. *Id.*

6. The Court believes there are no disputes concerning the following:

* that plaintiff is a female, and therefore a member of a protected class;

* that plaintiff filed two Charges of Discrimination against defendant before she was terminated, and that such filings are protected activity;

* that defendant terminated plaintiff, and that termination is an adverse employment action; and

* that defendant offered several legitimate, non-retaliatory reasons for plaintiff's termination.

The real dispute, in connection with both claims, is whether plaintiff was meeting the legitimate expectations of defendant and was fired for an illegal reason, or was not performing as required and was terminated for that legitimate reason. The Court, therefore, will examine that dispute.

7. Several principles -- in addition to those which relate to summary judgment in general -- guide the Court's evaluation of the evidence as to the legitimacy of plaintiff's termination. One is that a plaintiff may establish discriminatory motive indirectly by showing that the employer's proffered explanation is unworthy of credence:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. ([P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination.) In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its

decision. **Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)**(internal citations and quotation marks omitted). Courts do not, however, "sit as super-personnel departments to second-guess the business decisions of employers." The question is whether defendant's "reasons for its employment actions are true, not if they are wise, fair or correct." **Dorsey v. Pinnacle Automation Co., 278 F.3d 830 (8th Cir. 2002)**.

Another principle is that, where a plaintiff lacks direct evidence of discrimination or retaliation, an inference of discrimination or retaliation may be drawn from evidence that similarly situated employees outside the protected class were treated differently. **Tolen v. Ashcroft, 377 F.3d 879 (8th Cir. 2004)**. To be similarly situated, comparable employees must have the same supervisor, the same standards to follow, and have engaged in the same conduct. *Id.*

(a) Plaintiff offers evidence tending to show:

* that she had complained about the "boy's club" atmosphere of her workplace, and outbursts by DiBiase, starting in the Spring of 2001;

* that in July, 2001, Popelier promoted DiBiase to Omaha Sales Manager without informing plaintiff that a vacancy existed, even though DiBiase was ineligible for promotion because of his disciplinary status, plaintiff

-13-

      had seniority over DiBiase, and plaintiff outperformed DiBiase on sales;

* that plaintiff complained about DiBiase's promotion to Jeff Odom in the Human Resources department, because she considered it discriminatory, and Odom insisted that DiBiase be demoted back to sales rep;

* that the Omaha Sales Manager position was then posted, and only plaintiff and DiBiase applied for it;

* that neither plaintiff nor DiBiase was promoted to Sales Manager during the remainder of plaintiff's employment with defendant -- the position remained unfilled;

* that after DiBiase's demotion back to sales rep, plaintiff began to experience friction with Popelier, including a "tug of war" over the number of cold calls she was required to make and the issue of tardiness;

* that other sales reps supervised by Popelier had discrepancies in their cold call reports, but were not disciplined or terminated;

* that DiBiase frequently failed to make any cold calls at all, but was not disciplined or terminated for that failure;

* that the discrepancies in the cold call reports did not play a very large part in the termination decision;

* that Popelier had decided to fire plaintiff before the

cold call audits were conducted;

* that DiBiase was tardy more often than plaintiff but was not disciplined or terminated for that conduct;

* that plaintiff was not perceived as having a negative attitude by other co-workers;

* that plaintiff's attitude, whatever it was, did not play a very large part in the termination decision;

* that the reason given on plaintiff's Termination Authorization, "not meeting sales requirements," was true not only of her but of DiBiase and Schmidt, as well as other sales reps under Popelier's supervision, yet these sales reps were not terminated;

* that in 2000 and 2001, plaintiff substantially outperformed the other sales reps in the LaVista office, including DiBiase;

* that certain sales in 2002 were not credited to plaintiff, making her performance look worse than it actually was;

* that shortly after plaintiff was terminated, DiBiase was again promoted to Sales Manager; and

* that plaintiff was the only sales rep who had complained of gender discrimination.

(b) In the Court's view, the evidence offered by plaintiff fails to justify an inference that she was terminated because she

is a female.  There is neither direct nor indirect evidence that her termination was for that reason.  Other female employees under the supervision of Popelier were not terminated. Summary judgment in favor of defendant on plaintiff's claim of sex discrimination will therefore be granted.

(c)  The Court believes, however, that  conflicting evidence about why plaintiff was terminated could, if believed by a jury, be  sufficient  to  justify  an  inference  that  plaintiff  was terminated  in  retaliation  for  complaining  about  sex discrimination.  There is evidence that plaintiff complained about sex discrimination in connection with Popelier's promotion of DiBiase, although DiBiase was ineligible and plaintiff had more seniority and better sales.  Even if her belief was in error, a jury could find it reasonable.  "A plaintiff need not establish the conduct which she opposed was in fact discriminatory but rather must demonstrate a good faith, reasonable belief that the underlying challenged conduct violated the law." **Buettner v. Arch Coal Sales Co., Inc.**, **216 F.3d 707 (8th Cir. 2000)**.

In addition, there is evidence from which a jury could find that the reasons given for plaintiff's termination were not the true ones.  Odom gave one reason; Popelier gave another;  and the Termination Authorization gave still another.  These conflicts, coming from representatives of the employer who actually made the decision  and  therefore  are  in  the  best  position  to  state  why

-16-

plaintiff was fired, raise an inference of discrimination under **Reeves**.

Plaintiff's evidence also tends to prove that the major difference between herself and the other sales reps in the LaVista office was that she had complained about gender discrimination and they had not. A jury could find that the other sales reps supervised by Popelier in the LaVista office had discrepancies in their cold call reports, failed to turn in cold call reports, and failed to meet their sales requirements, but were not disciplined or terminated.

(c) Plaintiff's evidence as outlined above, if believed by the finder of fact, could support an inference that the real reason for plaintiff's termination was to retaliate against her for making complaints of sex discrimination. The Court is, of course, mindful that the evidence before it could also lead the trier of fact to conclude that plaintiff's termination had nothing to do with retaliation, but was a legitimate business decision to solve a personality clash in the office, which is not an unlawful basis for an adverse employment action under federal or state employment law. It is not for the Court to determine which a conclusion will be reached, however. At this stage of the case, all inferences favorable to plaintiff must be indulged, and if those inferences are such that a reasonable jury might find in favor of the plaintiff, summary judgment must be denied.

8. The defendant has requested oral argument in this matter. The Court does consider oral argument necessary in this case, however, and that request will be denied.

**IT IS THEREFORE ORDERED** that **Defendant's Motion For Summary Judgment And Request For Oral Argument** (document #37) is **granted in part and denied in part.**

The motion is granted as to plaintiff's claims of hostile environment sexual harassment and hostile environment retaliation, and as to her claim that she was terminated because of her sex.

The motion is denied as to plaintiff's claim that she was terminated in order to retaliate against her for complaining about sex discrimination.

The motion is also denied as to defendant's request for oral argument.

**IT IS SO ORDERED.**

                                          **/s/**
                                       **JIMM LARRY HENDREN**
                                       **UNITED STATES DISTRICT JUDGE**